[Cite as *State v. Burney*, 2014-Ohio-2622.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-354 |
| v. | : | (C.P.C. No. 14CR-1326) |
| Percy R. Burney, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-356 |
| v. | : | (C.P.C. No. 14CR-1320) |
| Keith J. Pippins, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 17, 2014

*Ron O'Brien,* Prosecuting Attorney and *Seth L. Gilbert,* for appellee.

*Meeks & Thomas,* and *David H. Thomas,* for appellant Percy R. Burney.

*Todd W. Barstow,* for appellant Keith J. Pippins, Jr.

APPEALS from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendants-appellants, Percy R. Burney and Keith J. Pippins, Jr., appeal from a judgment of the Franklin County Court of Common Pleas denying bail pursuant to

a motion filed by plaintiff-appellee, State of Ohio. For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On March 14, 2014, a Franklin County Grand Jury issued a 42 count indictment charging appellants and co-defendant, Jack Morris, with multiple felonies stemming from their participation in a drug-trafficking operation dealing in heroin, OxyContin and marijuana. The indictment also charged appellants with attempted murder and felonious assault in connection with a drive-by shooting incident that seriously injured Antwaun Waddell.

{¶ 3} On March 18, 2014, the State filed a motion, pursuant to R.C. 2937.222, seeking an order denying bail. The trial court conducted a hearing on the matter on April 16, 2014. As a result of the hearing, the trial court issued a decision on April 21, 2014, granting the State's motion and ordering appellants held without bail. Appellants timely appealed to this court from the trial court's decision.[1]

## II. Assignments of Error

{¶ 4} Appellant Burney assigns a single error as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN DECIDING TO HOLD DEFENDANT-APPELLANT WITHOUT BOND BECAUSE THE FINDINGS MADE BY THE TRIAL COURT ARE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶ 5} Appellant Pippins assigns a single error as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT BAIL AS ITS FINDINGS WERE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

## III. Standard of Review

{¶ 6} A trial court order denying bail is a final appealable order under R.C. 2937.222(D)(1) and it is considered by this court on an expedited basis pursuant to R.C. 2937.222(D)(1)(a) through (d). *State v. Foster*, 10th Dist. No. 08AP-523, 2008-Ohio-3525, ¶ 6. Such an order "will not be reversed absent a showing that the trial court abused

---

[1] Morris did not appeal from the trial court order denying him bail.

its discretion in finding that the prosecution had met its burden of proof to show that appellant should be denied bail." *Id.* at ¶ 4.  The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.* at ¶ 6, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

## IV. Legal Analysis

{¶ 7}   R.C. 2937.222 governs the proceedings upon a motion to deny bail. The statute provides, in relevant part, as follows:

> (A) * * * Regardless of whether the hearing is being held on the motion of the prosecuting attorney or on the court's own motion, the state has the burden of proving that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged, of proving that the accused poses a substantial risk of serious physical harm to any person or to the community, and of proving that no release conditions will reasonably assure the safety of that person and the community.
>
> * * *
>
> (B) No accused person shall be denied bail pursuant to this section unless the judge finds by clear and convincing evidence that the proof is evident or the presumption great that the accused committed the offense described in division (A) of this section with which the accused is charged, finds by clear and convincing evidence that the accused poses a substantial risk of serious physical harm to any person or to the community, and finds by clear and convincing evidence that no release conditions will reasonably assure the safety of that person and the community.

{¶ 8}   In their sole assignment of error, each appellant argues the trial court abused its discretion by denying bail inasmuch as the state failed to produce clear and convincing evidence that the requirements of the statute had been met. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Foster* at ¶ 6, quoting *Cross v. Ledford,* 161 Ohio St.3d 469 (1954), paragraph three of the syllabus.

{¶ 9}  The only witness who testified at the bail hearing was Detective Jeremy Ehrenborg of the Columbus Police ("CPD"). According to Ehrenborg, CPD received both citizen complaints and information from confidential informants that Jack Morris was operating a large scale drug-trafficking organization. Ehrenborg testified that Detective Keith Whitacre led the investigation into Morris' activities and that he was the second investigator on the case. Based upon Whitacre's affidavit, CPD obtained warrants authorizing a wire tap of cellular telephones belonging to several individuals, including Pippins and Morris.

{¶ 10} Beginning in August 2013, investigators overheard Morris and Pippins arranging numerous drug transactions with third-party buyers. CPD also orchestrated several "controlled" buys of heroin from Pippins. (Tr. 23.)  Pippins and Morris were subsequently overheard discussing plans to meet their Chicago-based supplier who was identified only as "Carlos." (Tr. 28.)

{¶ 11} In February 2013, Pippins asked Morris to come with him when he sold drugs to a buyer who identified himself as "Ron." Pippins asked Morris to bring his "Strap," which is street vernacular for a handgun. When Morris could not accompany Pippins, Pippins became angry and reminded Morris that the last time he went on a drug deal without Morris, the buyer robbed him.

{¶ 12} Later that same day, Pippins called Morris and told him that Ron had refused to pay for the heroin and had robbed him. Pippins subsequently telephoned Burney, who told Pippins that the man who robbed him is named Jeron Brown and that Brown is a member of the "Bloods" street gang.

{¶ 13} The very next morning, Pippins called someone he referred to as "Unc" who told Pippins that Jeron Brown lived down the street from him and that Brown was currently hanging out at the corner of Ellsworth and Kossuth in a white Pontiac. Pippins then made a call to Burney and told him to get the "choppers" ready. According to Ehrenborg, "chopper" is street vernacular for an AK-47 assault rifle. (Tr. 35.) Ehrenborg testified that, as he listened to this conversation, he heard the distinctive sound of an ammunition clip loaded into a weapon.

{¶ 14}  According to Ehrenborg, CPD quickly mobilized in an effort to stop the impending assault on Brown, but they "missed them." (Tr. 36.) Shortly thereafter, CPD

received a report of a shooting at Ellsworth. According to the report, the victim, Antwaun Waddell, was sitting in a white Pontiac with Jeron Brown when an assailant in a red Pontiac GTO fired shots into the vehicle.  Ehrenborg testified that Morris is the registered owner of a red Pontiac GTO.

{¶ 15} Shortly after the drive-by shooting incident, CPD intercepted a call between Morris and Pippins wherein Morris is heard asking Pippins if there are shells in his car to which Pippins responds, "hell yes." (Tr. 36.) According to Ehrenborg, Morris then called a friend and asked him if he could store his GTO in the barn. Morris proceeded to take another vehicle to Burney's house to pick up Pippins.

{¶ 16} Waddell sustained a gun shot wound to the head during the drive-by assault.  After checking with the CPD gang unit, Ehrenborg learned that Waddell had been a member of "Deuce-Deuce Bloods" street gang since 2007. At the hearing, Ehrenborg testified about a subsequent conversation between Jeron Brown and Pippins:

> Q. (By Mr. Stanley) Phone conversationswise [sic], did Jeron Brown speak with Keith Pippins after the shooting at all?
>
> A.  He did.
>
> Q.  Can you please describe those phone calls to the judge?
>
> A.  There was one phone call Jeron called him up and - - called Keith Pippins up and began talking to him, saying, you know, you didn't - - basically you didn't need to overreact, you know.  You've been in my place before, and there's been food around, talking about narcotics, street slang. And it's a several minute phone call, and then toward the end, Keith asks him so what about my cheese.  He's asking for his money from the heroin that Jeron ripped him off.
>
> * * *
>
> Yeah. And [Jeron] said you shot - - you shot my dude or you popped my dude, and then Keith said, whatever, and clicks and hangs up on him.  So that was the basis of the conversation.

(Tr. 46, 48.)

{¶ 17} Based upon the information gathered in the investigation, a total of 14 search warrants were issued, including two of the "no knock" variety. (Tr. 56.) Ehrenborg testified that "no knock" warrants are requested for purposes of officer safety. (Tr. 56.) The search of Pippins' home uncovered several firearms and a large amount of heroin; several operable firearms were also discovered in a search of Burney's residence.

{¶ 18} When determining whether an accused poses a substantial risk of serious physical harm to any person or to the community and whether there are conditions of release that will reasonably assure the safety of that person and the community, a trial court is required by R.C. 2937.222(C) to consider all of the following:

> (1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;
>
> (2) The weight of the evidence against the accused;
>
> (3) The history and characteristics of the accused, including, but not limited to, both of the following: (a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused; (b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

{¶ 19} The trial court issued a six-page decision on the motion. Therein, the trial court noted that, in addition to numerous drug-trafficking offenses, the indictment charged appellants with a RICO violation, one count of attempted murder, and two counts of felonious assault. The trial court concluded that the nature and circumstances of the charges against appellants weighed against appellants' release on bail. Appellants do not disagree with this conclusion.

{¶ 20} The trial court next determined that "for purposes of this hearing, it is also clear that each of the Defendants *were* involved, either directly or as complicitors, to those crimes with which they are charged." (Emphasis sic.) (Decision, 3.) Burney argues that the evidence does not create a great presumption of his guilt of the drug offenses inasmuch as he was not the "principal target" of the investigation. (Appellant Burney's brief, 3.) He also contends that there is no "tangible" evidence of his involvement in the drive-by shooting. (Appellant Burney's brief, 6.) Pippins maintains that the evidence does not permit a great presumption that he committed attempted murder.

{¶ 21} Burney's argument that he was not considered a suspect at the outset of the investigation carries little weight given the quantity of evidence subsequently uncovered by CPD which implicated Burney in drug trafficking activities with co-defendants Morris and Pippins. Similarly, while the evidence of Burney's involvement in the drive-by shooting is circumstantial in nature, such evidence, if believed, strongly suggests Burney's complicity in the shooting.  The evidence of Pippins' involvement in the shooting is even more compelling. In short, clear and convincing evidence presented at the hearing supports the trial court's conclusion.

{¶ 22} With regard to the history and characteristics of the accused, the evidence shows that Burney is married with four children and that Pippins is expecting a child with his girlfriend. Appellants are lifelong residents of Franklin County and Pippins continues to maintain a residence in Columbus, Ohio. While Burney has been evicted from his residence, his attorney represented to the court that Burney has made other living arrangements and that he has a standing offer of employment as a custodian in a business operated by a friend. Although the prosecutor was skeptical of these claims, the evidence presented at the hearing shows that there is little or no risk that appellants will flee if granted bail. However, given appellants' prior criminal records and the evidence uncovered in the drug-trafficking investigation, there is a risk that appellants will continue to engage in criminal activity if released. Indeed, the evidence shows that Pippins was on pre-trial release from another pending charge when he allegedly committed the offenses at issue in this case, and that Burney was on probation.

{¶ 23} In short, clear and convincing evidence admitted at the hearing supports the trial court's conclusion that appellants' history and characteristics do not favor release on bail.

{¶ 24} The fourth and final factor in the analysis is "[t]he nature and seriousness of the danger to any person or the community that would be posed by the person's release." R.C. 2937.222(C)(4). In our opinion, this is the most significant factor weighing against bail in this case. The trial court noted that appellants release would create a "very, very significant" risk of harm to the community. The trial court noted that appellants had collaborated in a drug-trafficking organization and that they had conspired to retaliate against Jeron Brown by committing a drive-by shooting in broad daylight. The trial court reasoned that such behavior "presents a significant danger to others." (Decision, 6.) We agree.

{¶ 25} Ehrenborg testified that CPD requested the "no knock" warrants in this case because they believed that Morris and appellants would be expecting retaliation for Waddell's shooting. At the hearing, Ehrenborg testified as follows:

> [Mr. Stanley] Q. You said their fear of retaliation. Who are you talking about?
>
> [Ehrenborg] A. Mr. Pippins, Mr. Burney, and Mr. Morris.
>
> Q. Why do you believe they had a fear of retaliation?
>
> A. After the robbery where -- or, actually, after the shooting, Keith [Pippins] began talking to Mr. Burney, and he talked to Mr. Morris. And Keith told Jack [Morris] to -- he might want to take his wife and kids and have them go to her mom's. Her mom lives out of town. And then Keith made another phone call, was asking a guy to bring a strap; he needed another one. And then he talked to -- Keith talked to Mr. Percy, Percy Burney here, and he asked him if he had a strap, and he said always; I always got one. But he was concerned about retaliation.

(Tr. 56-57.)

{¶ 26} Appellants argue that the trial court should not have relied on the information provided by Ehrenborg because his testimony consisted primarily of his own opinion of what the evidence showed. We note, however, that in an R.C. 2937.222

hearing, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." R.C. 2937.222(A); *State v. Michael,* 5th Dist. No. 2009AP-11-0059, 2010-Ohio-2587, ¶ 39. Ehrenborg estimated that CPD intercepted more than 50 conversations between and among appellants and Morris. In his testimony, Ehrenborg attempted to summarize and paraphrase what he and the other investigators heard in those conversations. While Ehrenborg's testimony includes inferences he drew from the facts gathered in the investigation as well as conclusions he reached after applying his particular knowledge and experience as an investigator, we find that his testimony provided sufficient factual content to permit the trial court to make its own findings and reach its own conclusions.

{¶ 27} Furthermore, while there is no direct evidence of a threat of retaliation against appellants either by Waddell, Jeron or any of their associates, Ehrenborg's testimony provides compelling evidence that appellants expect some sort of retaliation from Waddell's group.  Additionally, in his telephone conversation with Pippins prior to the shooting of Waddell, Burney stated, "we're at war with them anyway * * * I always got my strap on." (Tr. 72.)

{¶ 28} The trial court determined that the State presented clear and convincing circumstantial evidence of a "very, very significant" potential that appellants' release will create a danger to the community. (Decision, 6.)  When considering alternatives to the denial of bail, the trial court concluded that release conditions such as electronic monitoring or house arrest were "insufficient to protect the community from the extraordinary danger posed by these defendants." (Decision, 6.)  Appellants argue that the trial court erred by not specifying that clear and convincing evidence supported this conclusion. However, we note that the trial court expressly stated that "this is one of the very rare cases where a determination to deny bail is strongly supported by clear and convincing evidence."(Decision,  6.) Thus, we perceive no error in the language used by the trial court.  Additionally, based upon our review of the record, we agree with the trial court that, under the circumstances of this case, other release conditions would not have reasonably assured the safety of appellants or the community.

{¶ 29} In short, we find that the trial court made all of the required findings and that it was not an abuse of discretion for the trial court to deny bail. Accordingly, each appellant's assignment of error is overruled.

## V. Conclusion

{¶ 30} For the foregoing reasons, we hold that the trial court did not abuse its discretion when it determined that the State had proven, by clear and convincing evidence that appellants committed the offenses with which they were charged; that appellants pose a substantial risk of serious physical harm to the community; and that there are no release conditions which will reasonably assure the safety of appellants and the community. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

————————————